UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WING SHING PRODUCTS (BVI) LTD., | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION: 01 Civ. 1044 (RJH) |
| SIMATELEX MANUFACTORY CO., LTD., | } | |
| Defendant. | } | |

**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS**

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

## TABLE OF CONTENTS


**SECTION** **PAGE**

Table of Contents ..... i

**PRELIMINARY STATEMENT** ..... 1

**STATEMENT OF FACTS** ..... 2

A. Simatelex ..... 2

B. The Sunbeam/Wing Shing Contract for the AD10 ..... 3

C. The Simatelex Production of the AD Series ..... 3

D. The Sunbeam/Simatelex Contracts ..... 4

E. The Wing Shing Litigation ..... 6

**ARGUMENT** ..... 8

I. THIS COURT LACKS PERSONAL JURISDICTION OVER SIMATELEX ..... 8

A. Simatelex is Not Subject to Personal Jurisdiction Under CPLR ..... 8

B. The Establishment of Personal Jurisdiction Over Simatelex Would Violate the Due Process Clause of the United States Constitution ..... 10

II. WING SHING HAS FAILED TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED ..... 13

A. Wing Shing Has Failed to State a Claim for Direct Infringement ..... 13

B. Wing Shing Has Failed to State a Claim for Active Inducement of Infringement ..... 15

**CONCLUSION** ..... 17




PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Defendant Simatelex Manufactory Company, Ltd. ("Simatelex") has filed a Motion to Dismiss in the above-styled action based on a lack of personal jurisdiction and the failure of the complaint to state a claim for which relief can be granted. This memorandum of law, the supporting declaration of Simon Choi, and accompanying exhibits are filed in support of that motion.

**PRELIMINARY STATEMENT**

Simatelex, through its Motion to Dismiss, this accompanying Memorandum of Law, and its supporting evidence, presents to this Court grounds demonstrating that Wing Shing's claims against Simatelex are due to be dismissed for lack of jurisdiction and for failure to state claims for which relief can be granted. Although the grounds for lack of jurisdiction are presented here in terms of personal jurisdiction, Simatelex's position on the Plaintiff's failure to state a claim for actionable direct infringement is analogous to lack of subject matter jurisdiction. It was decided, however, that given the nature of the patent laws and Simatelex's manufacturing of the products in question, the issue was better approached from the perspective of a motion under Federal Rule of Civil Procedure 12(b)(6). In addressing these issues, Simatelex's material adequately demonstrates that the Plaintiff's claims against it are due to be dismissed and that Wing Shing should be left to pursue its claims against Sunbeam.



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

## STATEMENT OF FACTS

### A. Simatelex

Simatelex is a Hong Kong corporation with its principal place of business in Hong Kong. Choi Decl. at ¶ 1[1]. Since 1969, Simatelex has been in the business of manufacturing small household appliances and other products. *Id.* at ¶ 3. Generally, Simatelex manufactures products for other companies - such as Sunbeam - under those companies' brand names and according to the plans and specifications supplied by those companies. *Id.* at ¶ 3. From its beginnings in a small factory in Hong Kong, Simatelex has grown to three production plants and one tooling factory in China, with a work force of over 10,000 workers, and an output of over 20 million units annually. *Id.* at ¶4.

However, what is crucially important to Simatelex's motion is that Simatelex does not have any contacts with the State of New York or the United States. Choi Decl. at ¶ 5. It does not maintain a sales office or other U.S. representative in New York, it has no employees in New York, it does not pay taxes in New York, and it does not have real property or bank accounts in the State of New York. Its products are sold to its customers in Hong Kong, who are responsible for their own shipping, distribution and marketing. Simatelex does not advertise these products in the United States, it does not distribute them, and it does not even ship products to the United States for distribution. Choi Decl. at ¶ 6. Simatelex's products are delivered to a Hong Kong port or to a port in Shenzhen, China where shippers designated by Simatelex's customers then take physical control of the products, and transport them to the customers' designated destination. Simatelex's accounts at a Hong Kong bank are credited upon proof of delivery of

---

[1] The Declaration of Hon Keung Simon Choi, dated July 21, 2004 (cited herein as "Choi Decl. at ¶__"), is submitted herewith. Exhibits thereto are cited as "Choi Decl. Exh. __ at ___."



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

these products to a Hong Kong or Shenzhen port. Choi Decl. at ¶ 6.

One of Simatelex's customers is Sunbeam Products, Inc. ("Sunbeam), for which Simatelex manufactures several products under the "Mr. Coffee" brand name.[2] Simatelex has manufactured Mr. Coffee branded products since 1987.

**B. The Sunbeam/Wing Shing Contract for the AD10**

Wing Shing was also a manufacturer of Mr. Coffee appliances. On information and belief, in or prior to 1992, Sunbeam negotiated with Wing Shing for a new model of Mr. Coffee coffee makers. These negotiations resulted in a contract for the design and production of the AD 10 ("AD" stands for "automatic drip," while the number "10" refers to a ten-cup unit).[3] This contract (the "Sunbeam/Wing Shing Contract"), was executed on June 22, 1992, and was signed by John C.K. Sham – the person to whom United States design patent No. Des. 348,585 was issued on July 12, 1994.

**C. The Simatelex Production of the AD Series**

In or about March 1992, but after the Sunbeam/Wing Shing negotiations, Sunbeam invited Simatelex to manufacture some models in the AD series product line for Sunbeam. Choi Decl. at ¶ 10. Like most of the other Mr. Coffee products made for Sunbeam, these products were to be made according to Sunbeam's designs and specifications. Choi Decl. at ¶ 10. Based on these discussions, in or about June 1993, Simatelex began to manufacture the AD12 (12-cup automatic drip) model for Sunbeam. Choi Decl. at ¶ 10.

In or about 1993, Simatelex was asked by Sunbeam to begin producing AD10 model

---

[2] For ease of reference, the term "Sunbeam" will be used herein to refer to Sunbeam and all of its relevant predecessors in interest.

[3] Based on this contract, plus the fact that the "AD series" coffeemakers produced by Simatelex are the models in design to the Sham Patent, Simatelex assumes that Wing Shing's claim relates to the AD series products, and it is such products that are discussed herein. Choi Decl. at ¶ 9.



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

coffee makers as well. Choi Dec. at ¶ 11. On information and belief, the AD4 (4-cup automatic drip) model, the remaining model in the AD series line, was manufactured exclusively by Wing Shing until Simatelex was asked to manufacture it, in or about March 2000. Choi Decl. at ¶ 12. On information and belief, Simatelex had been manufacturing a substantial percentage of the Sunbeam Mr. Coffee coffee makers, and all, or virtually all, of the AD series. Choi Decl. at ¶ 12. Simatelex has ceased to manufacture all AD series coffee makers since mid-June 2003. Choi Decl. at ¶ 12.

**D. The Sunbeam/Simatelex Contracts**

The Sunbeam/Simatelex relationship is presently governed by a contract (the "Sunbeam/Simatelex Contract"). Although there were prior agreements between the parties, the current Contract is dated February 21, 2000, as amended by a Supplementary Agreement dated June 19, 2000. Choi Decl. at ¶ 13.

As with the Sunbeam/Wing Shing Contract, the Sunbeam/Simatelex Contract repeatedly provides that both ownership of and responsibility for the relevant intellectual property resides with Sunbeam. Thus, the first line of the "General Terms and Conditions" portion of the Contract provides that "Sunbeam owns or has the right to utilize certain patents, patent applications, designs, copyrights, trademarks, technical and other proprietary information relating to the products which are the subject of this Agreement." Choi Decl. Exh. A at § II.

Under the Contract, Sunbeam expressly warrants and represents to Simatelex that it owns the relevant intellectual property:

> Sunbeam warrants and represents that Sunbeam owns all patents, trademarks, service marks, copyrights, trade dress, mask works and any and all other intellectual property rights related to or residing in the Units or packaging (except for the intellectual property of Supplier) and that none of the Units infringes in any



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> manner on the intellectual property rights of any other.

Choi Decl. Exh. A at § II.17 (b). Sunbeam further agreed that:

> Unless such intellectual property right are originated from Supplier, any and all existing patent rights for the Units or any of its component parts shall be the sole and exclusive property and/or responsibility of Sunbeam. In the event that Sunbeam and Supplier jointly develop a patent-able item both parties agree to negotiate patent rights prior to applying for the patent.

Choi Decl. Exh. A. at § II.18(b)(i).

For its part, Simatelex agreed "that it would be damaging to Sunbeam to an irreparable degree if Supplier or any other customer of Supplier were to sell any Units which are identical or closely similar to aesthetic visual design to the Units supplied to Sunbeam or an appliance using the same [or] similar confidential design features." ***Id.*** at § II.18(b)(iv). Furthermore, Simatelex agreed that "Sunbeam shall have the exclusive right to the trade dress, visual design, and copyrights in the non-functional aspects of the Units and packaging covered by the Agreement." Choi Decl. Exh. A at § II.22(b).

The Sunbeam/Simatelex Contract expressly contemplated that Simatelex would be a manufacturer of the AD series coffee makers. Choi Decl. Exh. A at § 1.8. After this Contract was signed, the parties entered into a memorandum agreement (the "Sunbeam/Simatelex Memo Agreement") dated March 13, 2000. Choi Decl. Exh. C. This agreement provided that Simatelex would be the core supplier for the AD 10, 12, and 4 coffee makers.

Under the Sunbeam/Simatelex Contract, "[t]he FCA point (Incoterms 1990) to which Supplier shall deliver Units (under paragraph 7(a) of Part II) shall be at Hong Kong." Choi Decl. Exh. A at § I.7. Accordingly, Sunbeam delivers to Simatelex (at Simatelex's Hong Kong office) a six-month rolling advance forecast of quantities and models to manufacture. Simatelex



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

procures materials as necessary (on its own account), and commences production to meet that forecast. The units are delivered to Sunbeam's shipper at a port in Hong Kong. Upon proof of delivery to the shipper, Sunbeam's bank authorizes payment to Simatelex in Hong Kong, at which point title to the goods passes to Sunbeam. Choi Decl. at ¶ 15.

**E. The Wing Shing Litigation**

On February 9, 2001, Wing Shing filed suit against Simatelex alleging direct infringement of the Sham Patent under 35 U.S.C. 271(a) and active inducement of infringement of that patent under 35 U.S.C. 271(b). On February 12, 2001, upon the declaration of John C.K. Sham dated February 10 and the declaration of William Dunnegan, Esq., dated February 12, Wing Shing sought an Ex Parte Attachment Order and Temporary Restraining Order against Simatelex. Wing Shing initially proposed an *ex parte* order of attachment in the amount of $781,755. In support of the proposed ex parte attachment, Wing Shing sought to have Simatelex "TEMPORARILY RESTRAINED from accepting payment of any debt from Sunbeam Products, Inc., or any of its corporate affiliates."

Addressing the proposed order of attachment, this Court declined to enter the *ex parte* relief sought by Wing Shing. Instead, the Court denied the requested levy, entering only the temporary restraining order originally proposed by Wing Shing and requiring the posting of a $10,000 bond pending further determination of this matter. Furthermore, the Court directed Simatelex to show cause why an order should not be entered:

> (i) pursuant to Rule 64 of the Federal Rules of Civil Procedure and CPLR 6212, attaching any debt of Sunbeam Products, Inc. ("Sunbeam") or any of its corporate affiliates to defendant; [and]
>
> (ii) pursuant to Rule 65 of the Federal Rules of Civil Procedure and CPLR 6210, enjoining Sunbeam from paying, or defendant from accepting payment of, any debt owed to it by Sunbeam or



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

any of its corporate affiliates.

Although its *ex parte* order of attachment for the $781,755 was denied, Wing Shing later sought a much broader order attaching *any* debt of Sunbeam owed to Simatelex, and enjoining Sunbeam from making or Simatelex from receiving, *any* payment of any such debt. Following a hearing held on February 26, 2001, on the motion by Wing Shing and a motion in opposition submitted by Simatelex, the request for preliminary injunction was denied on May 11, 2001.

For reasons related to the bankruptcy proceedings of the Sunbeam Corporation and certain of its direct and indirect subsidiaries in the United States Bankruptcy Court for the Southern District of New York, this litigation was transferred to the suspense docket on February 27, 2001. The litigation was later removed from the suspense docket and reinstated on the active civil docket of this Court on October 28, 2003. Again, on February 24, 2004, this litigation was stayed pending a decision on the appeal in the Sunbeam bankruptcy litigation.

Following the resolution of the bankruptcy appeal and an unsuccessful Motion for Default Judgment by Wing Shing, this Court issued an order granting Simatelex until July 21, 2004 to move or answer plaintiff's complaint.



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

## ARGUMENT

### I. This Court Lacks Personal Jurisdiction Over Simatelex

In the Complaint filed by Wing Shing, there is no indication as to the basis of personal jurisdiction over Simatelex in the Southern District of New York. Why Wing Shing failed to address this issue should be very clear: there is simply no basis for personal jurisdiction over Simatelex in this Court. However, as the plaintiff, Wing Shing bears the burden of proving that this Court has personal jurisdiction over Simatelex. *Whitaker v. American Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (noting plaintiff's burden to establish a "factual predicate" sufficient to authorize jurisdiction over defendant).

In order to decide whether personal jurisdiction may be established over a non-domiciliary defendant in a patent case, the court must determine whether jurisdiction exists "under both the applicable state long-arm statute and the Due Process Clause of the Federal Constitution." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 427 (Fed. Cir. 1996).

#### A. Simatelex is Not Subject to Personal Jurisdiction Under CPLR § 302.

Under New York law, personal jurisdiction may be established under the provisions of its long-arm statute, Section 302 of the Civil Practice Law and Rules ("CPLR"). Although Wing Shing failed to reference the issue of personal jurisdiction in its Complaint, is clear that jurisdiction cannot be established over Simatelex under CPLR § 302(a)(2), which provides for personal jurisdiction over a non-domiciliary who commits a tort within the State if the claim for relief arises out of that act. Of primary importance in this case is the determination by the



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Second Circuit that § 302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). Moreover, this Court has held that § 302(a)(2) cannot be used to establish personal jurisdiction over a non-domiciliary defendant accused of actively inducing a patent infringement where the defendant was located in a different state, and did not commit any act while physically present in New York. *See Pieczenik v. Dyax Corp.*, 2000 WL 959753 (S.D.N.Y. July 11, 2000).

More likely, Wing Shing will attempt to use CPLR § 302(a)(3), which provides for personal jurisdiction over a non-domiciliary defendant who "commits a tortious act without the state causing injury to persons or property within the state,. . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state, or (ii) expects or should reasonably expect the act to have consequences in the state or derives substantial revenue from interstate or international commerce." N.Y. Civ. Prac. L. & R. 302(a). However, Simatelex is not subject to jurisdiction under CPLR § 302(a)(3) because it has not caused any injury within the state. According to the Federal Circuit, the injury to the patent holder occurs at the place where the infringing sale is made because the patent holder is most directly impacted at the site of the sale. *Beverly Hills Fan Company v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994). However, in applying the *Beverly Hills Fan* analysis to CPLR § 302(a)(3), the Southern District of New York determined that personal jurisdiction cannot be established over a non-domiciliary defendant when the defendant's out-of-state tortious act is too remote to be the cause of injury within the state. *See Art Leather Manufacturing Co. v. Albumx Corp.*, 888 F. Supp. 565, 567-568 (S.D.N.Y. 1995) (finding that defendant's sale of goods to a distributor in Illinois



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

could not have proximately caused the resale of the goods in New York where the defendant had "no economic concern" over where the distributor sold defendant's goods). Similarly, because Simatelex has no control over, and no economic concern with, where Sunbeam sells its coffee makers, Simatelex did not proximately cause Sunbeam to sell coffee makers in the state of New York.

Applying New York law, the locus of the injury would be the "location of the original event which caused the injury" and not the location of any resultant damages which the plaintiff might suffer at a later point in time. *Keramchemie v. Keramchemie Ltd.,* 771 F. Supp 618, 621 (S.D.N.Y. 1991). In commercial tort actions, this place of injury must be "where the defendant conducted the allegedly improper sale of goods or services or wrongfully manufactured the goods." *See Interface Biomedical Laboratories Corp.,* 600 F. Supp. 73 1,738-739 (E.D.N.Y. 1985) (noting that the presence or domicile of the plaintiff in the forum state is not sufficient to confer jurisdiction). Under CPLR § 302(a)(3), the locus of the injury suffered by Wing Shing must be located either where Simatelex manufactured the coffee makers, or where it sold the coffee makers to Sunbeam. Taking either definition, the locus of the injury would be Hong Kong, not the state of New York. Therefore, personal jurisdiction over Simatelex would not be proper in this Court under the applicable provisions of the New York state long-arm statute.

**B. The Establishment of Personal Jurisdiction Over Simatelex Would Violate the Due Process Clause of the United States Constitution**

When a defendant is not present within the territory of a forum state, due process requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945). The establishment of personal jurisdiction over a defendant is only proper where there is a "substantial connection" between the defendant and the forum state that has "come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 112 (1987).

In this case, the establishment of personal jurisdiction over Simatelex would offend due process considerations because Simatelex has no minimum contacts with New York, nor has Simatelex purposefully directed any activities toward New York. Simatelex has no office, property, employees, operations or bank accounts in New York. Choi Decl. at ¶ 5. Simatelex is not incorporated in New York, has no subsidiaries in New York, and is not registered to do business in New York. Choi Decl. at ¶ 5**.** Further, Simatelex does not conduct sales in New York, nor does it ship goods into New York, either directly or through intermediaries. Choi Decl. at ¶ 6. Simatelex does not solicit business in New York nor does it engage in advertising in a manner calculated to reach New York residents. Choi Decl. at ¶ 6. In summary, Simatelex does not avail itself of the privileges or benefits of New York, and has not, in any way, directed any activities toward the state of New York.

Moreover, Simatelex cannot be subject to jurisdiction solely by virtue of having placed coffee makers into the "stream of commerce." See, e.g., *World- Wide Volkswagen Corp. v. Woodson,* 444 U.S. 285, 297 (1980). A mere "awareness that the stream of commerce may or will sweep the product into the forum state" does not constitute an act that has been "purposefully directed" by the non-domiciliary defendant toward the forum state. *Asahi,* 480 U.S. at 112.

In *Beverly Hills Fan*, the Court used the "stream of commerce" theory, in part, to uphold



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the exercise of personal jurisdiction over a Chinese defendant accused of patent infringement, where the defendant manufactured the accused fans in Taiwan, and was held to have sold these fans through "intermediaries" to customers in Virginia. See *Beverly Hills Fan*, 21 F.3d at 1563.

The Federal Circuit concluded that the defendants had "purposefully shipped the accused fan into Virginia through an established distribution channel." *Beverly Hills Fan,* 21 F.3d at 1565. Addressing the reasoning of the *Beverly Hills Fan* decision, the United States District Court for the Eastern District of New York has held that a foreign manufacturer who partially owned a second corporation serving as a distributor of its products in the state of New York had an "established distribution channel" sufficient to confer personal jurisdiction over the manufacturer. *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 126 (E.D.N.Y. 1996).

Here, in contrast to *Beverly Hills Fan* and *Saxholm,* personal jurisdiction cannot be asserted over Simatelex under the "stream of commerce" theory because Simatelex does not have an "established distribution channel." Simatelex does not sell or distribute its coffee makers to customers in the state of New York through intermediaries. Simatelex merely manufactures the coffee makers for Sunbeam, but once it sells them to Sunbeam, it has no control over the distribution and destination of the coffee makers. Choi Decl. at ¶¶ 16, 17. Further, Simatelex does not brand its coffee makers with a Simatelex name or logo, nor does it advertise in New York. Choi Decl. at ¶ 17. *Cf. Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428-429 (Fed. Cir. 1996) (finding "regular chain of distribution" existed where defendant has exclusive distribution agreement with other party in forum state to "advertise, market, and distribute products in the United States" and where defendant's catalog was used to market product).

Finally, taking the reasoning of the *Saxholm* decision, Simatelex has absolutely no



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

ownership or controlling interest in Sunbeam, and lacks any means by which to control the activities of Sunbeam in the state of New York, if in fact Sunbeam operates within the state of New York. Whereas in *Saxholm* the plaintiff was able to show that the foreign defendant shared a director and officer with its partially-owned distributor within the state of New York, no such showing has been made or could be made with regard to the relationship between Simatelex and Sunbeam. Accordingly, any attempt to assert personal jurisdiction over Simatelex in this Court would run afoul of the basic concepts of Due Process under the Fifth and Fourteenth Amendments of the Constitution of the United States.

## II. Wing Shing Has Failed To State a Claim For Which Relief Can Be Granted

Viewed in reference to the laws of the United States governing the alleged infringement of design patents and the alleged active inducement of patent infringement, the Complaint first filed by Wing Shing on February 9, 2001 fails to state a claim for which relief can be granted. Essential elements of each of the two claims for relief are simply missing from the face of the Complaint and these elements cannot be supported by the relevant facts. Accordingly, the Complaint is due to be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A. Wing Shing Has Failed to State a Claim For Direct Infringement

Section 271(a) of Title 35 of the United States Code, cited by Wing Shing in the First Claim for Relief, provides that a patentee may file suit for direct infringement against "whoever without authority, makes, uses, offers to sell or sells any patented invention, ***within the United States or imports into the United States*** any patented invention during the term of the patent." (emphasis added).

As the Declaration submitted by Mr. Choi establishes, Simatelex did not sell or import its



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

products directly into the States, and therefore, Simatelex cannot be held liable for direct infringement of the Sham patent under the clear terms of 35 U.S.C. § 271(a). Because Wing Shing has failed to allege in the Complaint any infringing activity by Simatelex within the United States, its claim of infringement is subject to outright dismissal. ***See Rotec Indus., Inc. v. Mitsubishi Corp.***, 215 F.3d 1246, 1256 (Fed. Cir. 2000) (affirming the district court's decision granting summary judgment to defendant in patent infringement suit where there was no evidence of an offer for sale in the United States).

In his Declaration, Mr. Choi establishes that:

(a) Simatelex does not make, use, offer to sell or sell AD series of coffee makers in the United States

(b) Simatelex receives purchase orders from Sunbeam at Simatelex's Hong Kong offices;

(c) Simatelex's AD series of coffee makers are made by Simatelex in China;

(d) Simatelex delivers the coffee makers to Sunbeam's shippers in Hong Kong;

(e) Simatelex receives payment for the coffee makers upon delivery of documentation to its bank in Hong Kong;

(f) Sunbeam, not Simatelex, imports the AD coffee makers into the United States.

See Choi Decl. at ¶¶ 5-7, 15-17.

Under these facts, the extraterritorial activities of Simatelex in Hong Kong or China do not constitute actionable conduct under the United States patent laws. The United States Supreme Court stated this most clearly when it held that "[t]he right conferred by a patent under our law is confined to the United States and its territories and infringement of this right cannot be predicated on acts wholly done in a foreign country." ***Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.***, 235 U.S. 641, 651 (1915). Because Wing Shing has failed to state an essential element of the claim for direct infringement of the Sham Patent, namely an act of infringement



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

by Simatelex within the United States, this claim must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B. Wing Shing Has Failed to State a Claim For Active Inducement of Infringement**

Wholly apart from the failure of Wing Shing to allege any actionable conduct by Simatelex within the United States, in their Second Claim for Relief, Wing Shing has failed to make any clear allegation of intent by Simatelex. The Federal Circuit requires a substantial showing of intent to hold a defendant liable for active inducement of infringement under § 271(b):

> It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringer's action include infringing acts ***and*** that he knew or should have known his actions would constitute actual infringement.

*Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990). In *Manville*, the Federal Circuit reversed a finding of infringement under § 271(b) where "[defendants] were not aware of Manville's patent until suit was filed and that [the] subsequent infringing acts continued upon [defendants'] 'good faith belief,' based on advice of counsel, that [the] product did not infringe." *Id.* Under these facts, the Court found that the defendants could not have the "specific intent to cause another to infringe." *Id. See also, Hewlett-Packard, Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 199) (noting that in an active inducement claim, "proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite.")

Like the defendants in *Manville Sales*, Simatelex did not have actual knowledge of the Sham patent until this suit was filed. Choi Decl. at ¶ 9. Rather, Simatelex conducted all of its



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

activities under a contract with Sunbeam, which it reasonably believed owned the right to the AD coffee maker designs. Furthermore, in contracting with Simatelex, Sunbeam warranted and represented that Sunbeam owned all of the intellectual and property related to the products, and that none of the products infringes in any manner on the intellectual property rights of any other party. Choi Decl. Exh. A. at § II.17(b). It was on these representations and warranties that Simatelex justifiably, and in good faith, relied upon even after learning of this suit in early 2001.

Moreover, any argument that Simatelex worked to "actively induce" Sunbeam's alleged infringement of the Sham patent would have to ignore the realities of their business relationship. In 1992, Sunbeam approached Simatelex, inviting Simatelex to manufacture some AD series coffee makers. Choi Decl. at ¶ 10. Sunbeam provided all design drawings and specification, and required Simatelex to produce the coffee makers in accordance with these specifications. Choi Decl. at ¶ 10. Simatelex makes the products only for Sunbeam, at the direction of Sunbeam, and in response to purchase orders by Sunbeam. Choi Decl. at ¶ 10. At no point did the business relationship constitute any form of joint effort or collaboration; rather, Simatelex operated at all times at the behest of Sunbeam. Therefore, Simatelex cannot be said to have the specific intent to actively induce Sunbeam's infringement and this Second Claim for Relief must be dismissed for failure to state a claim for which relief can be granted. *See Amgen, Inc. v. Elanex Pharmaceuticals, Inc.*, 1996 WL 84590 (W.D. Wash. Feb. 6, 1996) (finding no specific intent under § 271(b) where the alleged inducee had obtained the technology, developed a plan to market its product, solicited the accused inducer, and retained control over the technology and production of the product).



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**CONCLUSION**

Accordingly, for all the reasons stated herein, it is respectfully submitted that the motion for dismissal is due to be granted in Simatelex's favor.

/s/ William Bradley Smith__________________
ORRIN K. AMES, III (AMES03454) (Alabama)
WILLIAM BRADLEY SMITH (WS3773)
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, AL 36601
Tel: (251) 432-5511
DID: (251) 694-6204
Fax: (251) 694-6375



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

CERTIFICATE OF SERVICE

I hereby certify that I have this 21st day of July, 2004, served copies of this Memorandum of Law in Support of the Defendant's Motion to Dismiss, along with supporting exhibits on the counsel whose names are listed below by placing a copy in the United States Mail, properly addressed and postage prepaid.

/s/ William Bradley Smith_____
WILLIAM BRADLEY SMITH

COUNSEL OF RECORD:

William Dunnegan, Esq.
Ronald L. Zaslow, Esq.
Perkins & Dunnegan
720 5th Avenue
New York, NY 10019



PDF created with FinePrint pdfFactory trial version www.pdffactory.com